**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| QUIQ CAPITAL, LLC,<br>Plaintiff,<br>v.<br>SOUTHPOINT BANK,<br>Defendant. | No. 25cv17389 (EP) (JRA)<br>**MEMORANDUM ORDER** |

**PADIN, District Judge.**

Plaintiff QUIQ Capital, LLC ("QUIQ"), a Delaware limited liability company with its principal place of business in New Jersey, alleges that Defendant SouthPoint Bank ("SouthPoint Bank" or "SouthPoint"), an Alabama-based bank, breached the parties' subordination agreement in connection with additional financing SouthPoint provided to nonparty Gas Pos, Inc. ("Gas Pos"). As a result, QUIQ alleges violations of New Jersey contract and tort law. D.E. 21 ("Amended Complaint" or "Am. Compl.").

After QUIQ commenced this action in the Superior Court of New Jersey, Union County, Law Division, the original Defendant, SouthPoint Bancshares, Inc.—SouthPoint's parent company—removed the case to this Court. D.E. 1 ("Notice of Removal"). Because SouthPoint Bancshares was not a party to the subordination agreement at issue, QUIQ amended its complaint to name SouthPoint Bank as the defendant. *See* Am. Compl. SouthPoint now moves to dismiss the Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6)[1] or,

[1] SouthPoint moves for dismissal pursuant to Rule 12(b)(6) for failure to state a claim, but neither the Motion nor the Reply provides any arguments supporting the 12(b)(6) motion. *See* Mot.; Reply. SouthPoint's briefs focus on personal jurisdiction issues concerning its 12(b)(2) motion

in the alternative, to transfer this case to the United States District Court for the Northern District of Alabama pursuant to 28 U.S.C. § 1404(a). D.E. 34-1 ("Motion" or "Mot.").[2] QUIQ opposes the Motion. D.E. 35 ("Opposition" or "Opp'n"). SouthPoint replies. D.E. 38 ("Reply").

The Court decides the Motion without oral argument. *See* Fed. R. Civ. P. 78; L. Civ. R. 78.1(b). For the reasons set forth below, the Court will **DENY** SouthPoint's Motion to Dismiss, **DENY *without prejudice*** SouthPoint's Motion to Transfer Venue, and **ORDER** supplemental briefing on SouthPoint's Federal Rule of Civil Procedure 17(a) real party in interest argument.

## I. BACKGROUND[3]

In December 2022, QUIQ loaned $6 million to Gas Pos under a written loan and security agreement. Am. Compl. ¶ 6. On the same day, QUIQ and SouthPoint entered into a subordination agreement regarding the loan to Gas Pos. *Id.* ¶ 7 & Ex. A (the "Subordination Agreement"). Under the Subordination Agreement, SouthPoint agreed, among other things, not to "obtain any new lien or security interest in any collateral against Gas Pos." *Id.* ¶ 8. QUIQ alleges that SouthPoint later issued a new loan to Gas Pos for approximately $11 million and by doing so, violated the Agreement. *Id.* ¶¶ 18–19. Based on that conduct, QUIQ brings four counts: (1) breach of contract; (2) declaratory judgment seeking a finding that the amendment to the contract is invalid; (3)

---

and the transfer request relating to the § 1404(a) motion. Given that SouthPoint "has offered no argument in support of this Rule 12(b)(6) motion, [the Court] will not address it." *SKF USA, Inc. v. Miller*, No. 10-4625, 2011 WL 940817, at *3 n.3 (E.D. Pa. Mar. 16, 2011).

[2] SouthPoint filed its Notice of Motion at D.E. 34. The Court refers to SouthPoint's memorandum of law as its Motion.

[3] The facts in this section are taken from the well-pled factual allegations in the Amended Complaint, which the Court presumes to be true for purposes of resolving the motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In resolving SouthPoint's Rule 12(b)(2) challenge, the Court may also consider affidavits and other competent evidence. *See Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002).

negligent misrepresentation; and (4) intentional misrepresentation. *Id.* ¶¶ 25–58.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 4(k), a district court may exercise personal jurisdiction according to the law of the forum state where it sits. *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 316 (3d Cir. 2007). New Jersey law permits the exercise of personal jurisdiction coextensive with the Due Process Clause of the United States Constitution. *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 96 (3d Cir. 2004) (citing N.J. Ct. R. 4:4-4(c)). Consistent with the exercise of jurisdiction permitted by the Due Process Clause, a defendant may therefore be subject to suit in New Jersey so long as the defendant has "certain minimum contacts with . . . [New Jersey] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *O'Connor*, 496 F.3d at 316–17 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).[4]

There are two types of personal jurisdiction: general and specific. *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 352 (2021). General jurisdiction allows a court to "hear any and all claims against" a defendant and may be exercised "when [the defendant's] affiliations with the State are so 'continuous and systematic' as to render [the defendant] essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quoting *Int'l Shoe*, 326 U.S. at 317).

[4] In *O'Connor*, the Third Circuit held that under Pennsylvania law, a court could exercise personal jurisdiction in accordance with the state's long-arm statute because it was coextensive with the U.S. Constitution's Due Process Clause. 496 F.3d at 316. New Jersey's long-arm rule is also coextensive with the Due Process Clause. *See Miller Yacht Sales*, 384 F.3d at 96. The Third Circuit's approach in *O'Connor* therefore applies to the exercise of personal jurisdiction under New Jersey law, too.

Specific jurisdiction, on the other hand, applies only to claims against a defendant that "relate to its contacts with the forum." *Bristol-Myers Squibb Co. v. Superior Ct. of Cal., San Francisco Cnty.*, 582 U.S. 255, 262 (2017) (citation modified) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014)). To determine whether it may exercise specific jurisdiction over a nonresident defendant, a court must analyze the relationship between the defendant's contacts with the forum and the plaintiff's claims. *Ford*, 592 U.S. at 359.

To exercise specific jurisdiction over a nonresident defendant, a court must find that: (1) the defendant has "purposefully avail[ed] itself of the privilege of conducting activities within the forum State," *Ford*, 592 U.S. at 359 (alteration in original) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)); and (2) the plaintiff's claims "'arise out of or relate to the defendant's contacts' with the forum," *id.* (quoting *Bristol-Myers*, 582 U.S. at 262). "In other words, there must be 'an affiliation between the forum and the underlying controversy, principally an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'" *Bristol-Myers*, 582 U.S. at 262 (quoting *Goodyear*, 564 U.S. at 919). The court must also find that exercising jurisdiction over the defendant would "'comport with traditional notions of fair play and substantial justice' such that 'the defendant should reasonably anticipate being haled into court in that forum.'" *Hasson v. FullStory, Inc.*, 114 F.4th 181, 186 (3d Cir. 2024) (citation modified) (quoting *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 451 (3d Cir. 2003)).

The plaintiff bears the burden of demonstrating facts that support a court's exercise of personal jurisdiction at the motion to dismiss stage. *Toys "R" Us*, 318 F.3d at 456. At this stage, a district court must still construe disputed facts in favor of the plaintiff and "[w]here the district court does not hold an evidentiary hearing, the plaintiff need only establish a prima facie case of personal jurisdiction." *Eurofins Pharma US Holdings v. BioAlliance Pharma SA*, 623 F.3d 147,

155 (3d Cir. 2010). When a plaintiff does "suggest 'with reasonable particularity' the possible existence of the requisite 'contacts between [the nonresident defendant] and the forum state,'" the court should sustain the plaintiff's right to conduct jurisdictional discovery. *Toys "R" Us*, 318 F.3d at 456 (quoting *Mellon Bank (E.) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992)).

When a defendant challenges personal jurisdiction, the plaintiff bears the burden of establishing the facts supporting jurisdiction and, once the defendant raises a jurisdictional defense, must support jurisdiction with "affidavits or other competent evidence." *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009). If the Court does not hold an evidentiary hearing, however, the plaintiff need only establish a prima facie case of personal jurisdiction, and the Court construes disputed jurisdictional facts in the plaintiff's favor. *Id.* The plaintiff ultimately bears the burden of establishing jurisdiction by a preponderance of the evidence, and the Court may revisit the jurisdictional question if discovery reveals a genuine dispute concerning the facts supporting jurisdiction. *See Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 146 (3d Cir. 1992); *Metcalfe*, 566 F.3d at 330–31.

A defendant may, however, "waive personal jurisdiction through a forum selection clause." *Knights Franchise Sys., Inc. v. Forward Hotels & Dev., LLC*, No. 17-2789, 2019 WL 2636070, at *3 (D.N.J. June 27, 2019).

## III. DISCUSSION

SouthPoint raises three arguments: (1) the Court lacks personal jurisdiction because the Agreement's forum selection clause refers to a nonexistent "County of New Jersey"; (2) alternatively, that the Court should transfer this action to the Northern District of Alabama under 28 U.S.C. § 1404(a); and (3) for the first time in its reply, that Plaintiff's Amended

Complaint should be dismissed because QUIQ is not the real party in interest under Federal Rule of Civil Procedure 17(a). The Court addresses these arguments in turn. For the reasons explained below, the Court will **DENY** SouthPoint's motion to dismiss at this stage and will **DENY** SouthPoint's motion to transfer venue ***without prejudice*** to the possibility of renewal following discovery.

### A. QUIQ Has Made a Prima Facie Showing of Personal Jurisdiction in New Jersey

The Court first addresses SouthPoint's argument that the Amended Complaint should be dismissed due to an error in Section 17 of the Subordination Agreement (the "Forum Selection Clause"), which provides:

> EACH OF LENDER, SUBORDINATED CREDITOR AND BORROWER HEREBY CONSENTS TO THE JURISDICTION OF ANY STATE OR FEDERAL COURT LOCATED WITHIN *THE COUNTY OF NEW JERSEY*, STATE OF NEW JERSEY AND IRREVOCABLY AGREES THAT ALL ACTIONS OR PROCEEDINGS ARISING OUT OF OR RELATING TO THIS AGREEMENT SHALL BE LITIGATED IN SUCH COURTS. EACH OF LENDER, SUBORDINATED CREDITOR AND BORROWER EXPRESSLY SUBMITS AND CONSENTS TO THE JURISDICTION OF THE AFORESAID COURTS AND WAIVES ANY DEFENSE OF FORUM NON CONVENIENS.

Subordination Agreement § 17 (emphasis added).

SouthPoint argues that dismissal is required because the Forum Selection Clause requires that this action be litigated in a forum that does not exist: the "County of New Jersey," within the State of New Jersey. Mot. at 7–12. QUIQ responds that "the County of New Jersey" is a clear drafting error and that the parties intended the clause to refer to "any county in New Jersey." Opp'n at 2–6. QUIQ therefore asks the Court to correct this error under the scrivener's error doctrine. *Id.* at 2. At this stage and on the present Rule 12(b)(2) record, the Court need not reform the Clause, but QUIQ has made the required prima facie showing that the Forum Selection Clause contains a scrivener's error and reflects the parties' agreement to litigate in New Jersey.

1. *The present record establishes a prima facie case that the Forum Selection Clause contains a scrivener's error*

QUIQ argues that the Court should "correct" the clear error in the contract to conform to the parties' intent. Opp'n at 2–6. The Court need not make a determination on reformation, however, to resolve SouthPoint's Rule 12(b)(2) motion. The Subordination Agreement provides that New Jersey law governs. *Id.* § 14. Under New Jersey law, reformation based on mutual mistake "requires that both parties are in agreement at the time they attempt to reduce their understanding to writing, and that writing fails to express that understanding correctly." *St. Pius X House of Retreats v. Diocese of Camden*, 88 N.J. 571, 579 (1982). A party seeking reformation based on mutual mistake must provide "clear and convincing evidence" that the proposed reformed language reflects the parties' actual agreement. *Allied Bldg. Prods. Corp. v. J. Strober & Sons, LLC*, 437 N.J. Super. 249, 263 (App. Div. 2014) (citing *Bonnco Petrol, Inc. v. Epstein*, 115 N.J. 599, 608–09 (1989)).[5]

Because the Court analyzes SouthPoint's Motion under Rule 12(b)(2) without an evidentiary hearing, QUIQ need only make a prima facie showing of personal jurisdiction, and the Court construes disputed jurisdictional facts in QUIQ's favor. *Metcalfe.*, 566 F.3d at 330–31. In assessing whether QUIQ has made this prima facie showing, the Court may consider "affidavits or other competent evidence that jurisdiction is proper." *Id.* at 330

On the present record, QUIQ has made the required prima facie showing of jurisdiction. The "paramount goal of contract interpretation is to determine the intent of the parties." *Am. Eagle*

[5] Applying Pennsylvania law, the Third Circuit has held that a drafting mistake may be reformed based on parol evidence that is "clear, precise, convincing and of the most satisfactory character that a mistake has occurred and that the mistake does not reflect the intent of the parties." *Int'l Union of Elec., Elec., Salaried, Mach. & Furniture Workers, AFL-CIO v. Murata Erie N. Am., Inc.*, 980 F.2d 889, 907 (3d Cir. 1992) (citation modified).

*Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 587 (3d Cir. 2009) (citations omitted). As a starting point, the parties do not dispute that the Forum Selection Clause's phrase "the County of New Jersey" was an error because no such county exists. *See* Mot.; Opp'n. SouthPoint states that "[t]here is no dispute" that the Clause "contains a mistake and designates as an exclusive forum a forum that does not exist." Mot. at 7; *see also* Opp'n at 3 ("It is undisputed that 'the county of New Jersey' does NOT exist. Thus, it is clear that a mistake occurred in drafting the Agreement and that the mistake does NOT reflect the intent of the Parties.").

The parties disagree about what follows from that mistake. SouthPoint argues that as a result, the Forum Selection Clause cannot be enforced and this Court should dismiss the action, whereas QUIQ argues that the Court should correct the language to read "any County of New Jersey." Opp'n at 6.

QUIQ supports its position that jurisdiction is proper with two declarations. *First*, Matthew Mendonca, a QUIQ member and representative who participated in negotiating the agreement, states that QUIQ intended the Forum Selection Clause to permit suit in any state or federal court located within any New Jersey county and that, based on his negotiations and communications with SouthPoint, he understood SouthPoint to share that intent. D.E. 35-1 ("Mendonca Decl.") ¶¶ 4–7. *Second*, Kathleen Munoz, counsel involved in drafting the Agreement, states that "the County of New Jersey" was a typographical error, that she intended the clause to read "any County of New Jersey," and that the intended formulation was consistent with her practice and the related loan documents. D.E. 35-2 ("Munoz Decl.") ¶¶ 2, 4–7.

SouthPoint does not refute QUIQ's declarations. *See generally* Reply. SouthPoint instead puts forth a declaration from Lynn Woodall, SouthPoint's Chief Risk Officer. *See* D.E. 34-2 ("Woodall Decl."). Woodall states that SouthPoint's offices, employees, and business operations

are in Alabama and identifies former Chief Credit Officer Bill Jones as the SouthPoint representative who executed the Subordination Agreement. *Id.* ¶¶ 2–11. Woodall, however, does not address the drafting of the Forum Selection Clause, the negotiations concerning that provision, or the parties' intended forum. *See id.* SouthPoint also does not provide any declaration from Jones or any other participant that disputes Mendonca or Munoz's account of events. *See generally* Reply; Dkt. Thus, while SouthPoint's evidence concerns its contacts with New Jersey, it does not rebut QUIQ's evidence concerning SouthPoint's consent to jurisdiction.

SouthPoint's failure to offer competing evidence concerning the parties' intended forum further supports the Court's conclusion that QUIQ has made a prima facie showing of jurisdiction. *See Snyderman v. Sovereign Fed. Sav. Bank*, No. 97-1592, 1997 WL 717045, at *3 (E.D. Pa. Nov. 18, 1997) (finding that an "unrefuted affidavit" and the plaintiff's conduct following an agreement demonstrated the parties' intent).

SouthPoint's additional argument that reading the clause to permit suit in "any County of New Jersey" makes the word "County" unnecessary because every location in New Jersey lies within a county also does not defeat QUIQ's prima facie showing of jurisdiction. Reply at 1–2. While SouthPoint's argument may be relevant to the ultimate merits of reformation, here, both sides agree the existing phrase is mistaken. *See* Mot.; Opp'n. At this stage, the relevant question is what the parties intended the Forum Selection Clause to say; SouthPoint's surplusage argument does not rebut QUIQ's competent evidence of the parties' intent.

SouthPoint relies on *MacDonald v. CashCall, Inc.*, where the contract required arbitration in a tribal arbitral forum that did not exist, and the Third Circuit concluded that the designated forum was integral to and non-severable from the arbitration agreement and as a result, the provision could not be enforced. 883 F.3d 220, 228–32 (3d Cir. 2018). Here, by contrast, the

parties indisputably attempted to select courts in New Jersey; the defect is the county designation within the State. The Agreement's other provisions and QUIQ's evidence identifying the alleged drafting mistake and intended wording distinguish *MacDonald* and permit consideration of scrivener's error on this record.

*2. The Agreement's other New Jersey provisions reinforce QUIQ's prima facie showing of personal jurisdiction*

The Subordination Agreement's other provisions also reinforce QUIQ's prima facie showing of SouthPoint's consent to jurisdiction in New Jersey.

Section 14 provides that the Agreement "shall be governed by and shall be construed and enforced in accordance with the internal laws of the State of New Jersey." Subordination Agreement § 14. A choice of law provision "standing alone would be insufficient to confer jurisdiction," but when combined with other contacts, it may reinforce a defendant's "deliberate affiliation with the forum State and the reasonable foreseeability of possible litigation there." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 482 (1985).

The Agreement also contains a severability clause that requires an unenforceable provision to be modified "to achieve the intention of this Agreement," *id.* § 12, and the "No Strict Construction" provision states that the parties participated jointly in negotiating and drafting the Agreement, *id.* § 15. Further, the Forum Selection Clause itself repeatedly identifies New Jersey, requires covered actions to be litigated in the designated courts, and waives the forum non conveniens defense. Lastly, the parties later amended the Agreement without changing the Forum Selection Clause. *See* Am. Compl., Ex. C ¶ 8. These provisions are objective evidence supporting QUIQ's prima facie showing that SouthPoint intentionally affiliated this contractual relationship with New Jersey and could reasonably foresee litigation here.

This case also arises directly from that Agreement. QUIQ seeks to enforce the Subordination Agreement and asserts related misrepresentation claims based on SouthPoint's alleged conduct under the same financing relationship. Am. Compl. ¶¶ 25–58. Thus, this is not a case in which Plaintiff's residence is the only connection to the forum. *Cf. Walden v. Fiore*, 571 U.S. 277, 285 (2014) (explaining that for personal jurisdiction, the "plaintiff cannot be the only link between the defendant and the forum").

Taken together, the undisputed drafting error, the Mendonca and Munoz declarations, and the Agreement's repeated New Jersey provisions establish a prima facie basis to conclude that the Forum Selection Clause was intended to select New Jersey courts. *See Bright Ideas Funding Grp., LLC v. Magic*, No. 12-1714, 2012 WL 13029764, at *5 (D.N.J. Sept. 4, 2012) (finding a choice of law provision "[c]onsidered in conjunction with the other aforementioned factors" established personal jurisdiction over the defendant). SouthPoint's contrary contractual interpretation does not overcome that showing at the Rule 12(b)(2) stage.

The Court therefore concludes that for purposes of SouthPoint's Motion to the extent it seeks dismissal pursuant to Rule 12(b)(2), QUIQ has established a prima facie basis for personal jurisdiction through SouthPoint's contractual consent because the Forum Selection Clause was intended to select a New Jersey court as the forum.

QUIQ's prima facie showing of personal jurisdiction, however, does not finally resolve the parties' intended meaning of the Forum Selection Clause. The Court may revisit jurisdiction after the parties engage in further discovery. *Metcalfe*, 566 F.3d at 331, 336. The same discovery may also bear on the meaning and enforceability of the Forum Selection Clause for purposes of SouthPoint's transfer request. Accordingly, SouthPoint's Motion is **DENIED** to the extent it seeks dismissal under Rule 12(b)(2).

**B. SouthPoint's Request to Transfer Venue Will Be Denied Without Prejudice**

SouthPoint alternatively seeks to transfer venue to the Northern District of Alabama under 28 U.S.C. § 1404(a). Mot. at 12–16. "In the typical case" that does not involve a forum selection clause, the court "must evaluate both the convenience of the parties and various public-interest considerations." *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 62 (2013). The court would then decide based on the balance of those factors whether "a transfer would serve 'the convenience of the parties and witnesses' and otherwise promote 'the interests of justice.'" *Id.* at 63 (quoting § 1404(a)).

When there is a valid forum selection clause, however, the parties' private interests are deemed to favor the contractually selected forum, and the Court considers only the public interest factors. *Id.* at 51, 64. Because the Court has found only a prima facie basis for personal jurisdiction, it does not decide at this stage whether the Forum Selection Clause is enforceable. The public interest factors, however, are relevant under either framework, and therefore may be assessed now. *See Reading Health Sys. v. Bear Stearns & Co.*, 900 F.3d 87, 97 (3d Cir. 2018). If the clause ultimately proves to be unenforceable, both the private and public interest factors will apply. *Id.*

The public interest factors include: (1) enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) relative administrative difficulties in the two fora resulting from court congestion; (4) local interests in deciding local controversies at home; (5) public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases. *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879–80 (3d Cir. 1995).

The party seeking to depart from the selected forum bears the burden, and if there is a valid forum selection clause, public interest considerations will "rarely" justify a transfer motion. *In re McGraw-Hill Glob. Educ. Holdings LLC*, 909 F.3d 48, 57–58 (3d Cir. 2018). So "the practical result is that forum-selection clauses should control except in unusual cases." *Id.* at 57–58. If the Forum Selection Clause is enforceable, the Subordination Agreement also dictates that it is mandatory: the parties "irrevocably agree[d]" that covered actions "shall be litigated" in the selected courts and expressly waived "any defense of forum non conveniens." Forum Selection Clause.

Here, even though they are mixed, the six public interest factors would fail to overcome the presumption in favor of the Forum Selection Clause.

*First*, enforceability of the judgment is neutral. SouthPoint has not shown that a judgment entered in this District would be difficult to enforce in Alabama. A federal judgment generally may be enforced in another district. *See Palladino v. Leavitt*, No. 22-6756, 2023 WL 6366095, at *8 (D.N.J. Sept. 29, 2023) ("A judgment in any federal court can be enforced through appropriate procedures in other forums and [the defendants] have not shown that it would be difficult to enforce a judgment entered by the District of New Jersey.").

*Second*, practical considerations modestly favor Alabama. SouthPoint emphasizes Gas Pos's pending Chapter 11 bankruptcy case in the Northern District of Alabama and the potential future setoff or enforcement issues there. Mot. at 15–16; Reply at 6–7; Woodall Decl. ¶ 13. Those related proceedings may create some administrative efficiency if this action is transferred to Alabama. SouthPoint's additional reliance on the location of witnesses, documents, and the parties, however, concerns private interests. As a result, consideration of such factors depends on

the enforceability of the Forum Selection Clause, so the Court does not consider them at this stage. *See Atl. Marine*, 571 U.S. at 64.

*Third*, court congestion is neutral. SouthPoint provides no comparative docket evidence showing that this case would proceed materially faster in the Northern District of Alabama, and the Court therefore gives this factor no weight.

*Fourth*, local interest in the controversy factor is neutral. Alabama has a substantial interest because SouthPoint and Gas Pos are based there and the underlying financing concerned an Alabama-based borrower. Mot. at 15; Woodall Decl. ¶¶ 4, 12. New Jersey, however, also has an interest because QUIQ alleges its principal place of business is here and, more importantly, the Subordination Agreement selects New Jersey law and the Forum Selection Clause, if enforceable, selects New Jersey courts for disputes arising from the Agreement. Am. Compl. ¶ 4; Subordination Agreement §§ 14, 17.

*Fifth*, neither side identifies a distinct public policy of New Jersey or Alabama that materially favors transfer. This factor is therefore neutral. *See Czajkowski v. Peal*, No. 14-3803, 2015 WL 1914605, at *8 (D.N.J. Apr. 27, 2015).

*Sixth*, and finally, familiarity with governing law weighs modestly against transfer. The Agreement selects New Jersey law. Subordination Agreement § 14. Although "federal judges routinely apply the law of a State other than the State in which they sit," *Atl. Marine*, 571 U.S. at 67, a New Jersey federal court has greater familiarity with New Jersey contract law. *Wolfe v. Gooding & Co.*, No. 14-4728, 2015 WL 917311, at *5 (D.N.J. Mar. 3, 2015). Thus, this factor slightly favors the selected forum.

Taken together, the public interest factors do not independently warrant transfer. If the Forum Selection Clause is established to be enforceable, those factors do not present the "unusual"

or "extraordinary" circumstances necessary to displace the parties' selected forum. *See In re McGraw-Hill*, 909 F.3d at 56–58.[6] If the Forum Selection Clause is unenforceable, the Court will apply the private interest factors as well. *Jumara*, 55 F.3d at 879–80. Discovery may develop additional evidence regarding the parties' intent that bears on whether the private interest factors must be considered and whether transfer is warranted.

The Court will therefore **DENY *without prejudice*** SouthPoint's request to transfer venue and may revisit transfer on a more developed record after discovery.

### C. SouthPoint's Rule 17(a) Argument Does Not Warrant Dismissal at This Stage

Finally, the Court addresses SouthPoint's argument—first raised in reply—that QUIQ is not the proper party to bring this action because it assigned its rights to QUIQ Income Fund, L.P. *See* Reply at 8.[7] Typically, "[a]n issue is waived unless a party raises it in its opening brief." *Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Energy Corp.*, 26 F.3d 375, 398 (3d Cir. 1994). The Court therefore does not address the merits of SouthPoint's Rule 17 argument on the present briefing.

Nonetheless, when an assignor "completely assign[s] its right to enforce payment," it lacks standing as the real party in interest under Rule 17. *Sanford Inv. Co., Inc. v. Ahlstrom Mach. Holdings, Inc.*, 198 F.3d 415, 425 (3d Cir. 1999). SouthPoint relies on documents QUIQ filed in another action, *QUIQ Income Fund, L.P. v. Gas Pos, Inc.*, No. 25-15982, D.E. 14-2 ¶ 27 (D.N.J.),

---

[6] If the Forum Selection Clause is enforceable, this conclusion is reinforced by SouthPoint's express waiver of forum non conveniens in the Subordination Agreement. Subordination Agreement § 17.

[7] The Court notes that although SouthPoint labels this argument as a "standing" issue, it invokes Rule 17(a)(1)'s requirement that "[a]n action must be prosecuted in the name of the real party in interest." Reply at 8. SouthPoint does not separately raise an Article III standing argument. *See id.* Therefore, the Court only addresses SouthPoint's "standing" argument in the context of Rule 17.

indicating that on December 9, 2022, QUIQ Capital assigned its interest in the Gas Pos Loan to QUIQ Income Fund under an "Omnibus Assignment Agreement."[8] Reply at 8. The present record, however, does not establish whether that assignment included the Subordination Agreement or the claims in this action, whether QUIQ retained any enforcement rights, or whether ratification, joinder, or substitution could cure any Rule 17 defect.

Rule 17(a)(3) provides that "[t]he court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action." Fed. R. Civ. P. 17(a)(3). This provision is intended to "prevent forfeiture of an action when determination of the proper party to sue is difficult or when an understandable mistake [may have] been made." *Gardner v. State Farm Fire & Cas. Co.*, 544 F.3d 553, 563 (3d Cir. 2008). As SouthPoint raised this issue for the first time in reply, and because the present record does not resolve the scope of the assignment, dismissal on Rule 17(a) grounds is inappropriate at this stage.

Accordingly, within **30 days**, QUIQ must file a supplemental submission attaching the complete Omnibus Assignment Agreement and addressing (1) whether the Subordination Agreement and the claims against SouthPoint were assigned; (2) whether QUIQ remains the real party in interest; and (3) if not, whether Rule 17(a)(3) permits ratification, joinder, or substitution. SouthPoint may file a response within **14 days** thereafter. At this time, the Court expresses no view on SouthPoint's Rule 17(a) argument.

---

[8] A court may take judicial notice of public records, including judicial proceedings, and may take judicial notice of another court's opinion for its existence, but not for the truth of the facts recited therein. *S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999) (citations omitted).

## IV. CONCLUSION AND ORDER

For the reasons set forth above,

**IT IS**, on this **1st** day of October, 2026,

**ORDERED** that Defendant's Motion, D.E. 34, is **DENIED**; and it is further

**ORDERED** that Defendant's Motion, to the extent it seeks dismissal based on Rules 12(b)(2) and 12(b)(6), is **DENIED**; and it is further

**ORDERED** that Defendant's Motion, to the extent it seeks to transfer venue, is **DENIED** ***without prejudice***; and it is finally

**ORDERED** that within **30 days** of the entry of this Order, Plaintiff shall file a supplemental submission attaching the complete Omnibus Assignment Agreement and addressing (1) whether the Subordination Agreement and the claims against SouthPoint were assigned to QUIQ Income Fund, L.P.; (2) whether Plaintiff remains the real party in interest under Rule 17(a)(1); and (3) if not, whether Rule 17(a)(3) permits ratification, joinder, or substitution. Defendant may file a response within **14 days** thereafter.

Evelyn Padin, U.S.D.J.